IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TODD MARRIOTT,<br><br>    Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>    Defendant. | **OPINION**<br><br><br>Case No. 2:18-CV-00629<br><br>District Judge Dee Benson |

Before the court is Defendant Allstate Insurance Company's ("Allstate") Motion for Summary Judgment. Dkt. No. 21. In its motion, Allstate seeks summary judgment on its contention that Plaintiff Todd Marriott's ("Marriott") claims are not timely in light of the relevant three-year statute of limitations. The motion has been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

BACKGROUND

The following facts are not in dispute. On May 30, 2011, Marriott was involved in a motor vehicle accident with another vehicle being driven by Lloyd D. Allen. Dkt. No. 21 at 2. Allen, who was insured by Allstate Fire and Casualty Insurance Company (AFCIC), was deemed to be at fault for causing the accident. *Id.* at 2-3. On the date of the accident, Marriott held an automobile insurance policy through Defendant Allstate which included under-insured motorist

(UIM) coverage. *Id.* at 3. Shortly after the accident, Marriott made a bodily injury claim on Allen's liability policy. *Id.* For the next several years, Marriott, represented by David Shaw of the law firm Kirton McConkie, negotiated the claim with AFCIC. *Id.* at 3-4. On December 4, 2014, AFCIC offered to settle Marriott's claim for Allen's policy limits of $100,000, and Mr. Shaw accepted that offer on Marriott's behalf. *Id.* at 4.

On December 11, 2014, AFCIC sent a formal memorialization of the settlement agreement to Kirton McConkie acknowledging the settlement amount and providing a proposed release of all claims ("Release") for Marriott to sign. *Id.* The same day, AFCIC made an internal request for the $100,000 liability policy payment to be drafted and sent to Mr. Shaw at Kirton McConkie. *Id.* The payment was sent the following day, December 12, 2014. *Id.* Mr. Shaw, on Marriott's behalf, received both the Release and the $100,000 check sometime thereafter. The exact date on which Mr. Shaw received the check was not recorded, but the parties agree that Mr. Shaw had been holding the check in his file for "a few weeks" prior to March 9, 2015. *Id.* at 5, Dkt. No. 27 at 2. Marriott signed the Release on March 17, 2015, and the executed Release was received by AFCIC on April 7, 2015. Dkt. No. 27 at 3. The $100,000 check was deposited into Kirton McConkie's trust account on April 13, 2015.[1] *Id.* at 4-5. Marriott initiated the current action seeking UIM benefits on March 16, 2018. *Id.* at 1.

---

[1] Marriott's significant delay in signing the Release and depositing the check has been attributed to his involvement in separate divorce proceedings and his search for new employment. Dkt. No. 21 at 5-6. These delays were solely at the discretion of Marriott. The undisputed fact remains that the check was sent to, and received by, Marriott's attorney well before March 9, 2015.

DISCUSSION

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"When the dates on which the pertinent acts occurred are not in dispute, the date a statute of limitations accrues is a question of law." *Bistline v. Parker*, 918 F.3d 849, 862 (10th Cir. 2019). Given that both of Marriott's causes of action are state-based claims, this court is required to apply Utah's statute of limitations. *Id.* at 876. The statutes at issue are Utah Code Ann. § 31A-21-3131(1)(a) ("An action on a written policy or contract of first party insurance shall be commenced within three years after the inception of the loss") and Utah Code Ann. § 31A-22-305.3(5) ("The inception of the loss . . . for underinsured motorist claims occurs upon the date of the last liability policy payment"). Taken together, these statutes require Marriott to have initiated any UIM claims "within three years after" "the date of the last liability policy payment."

The parties agree that the $100,000 check settling all claims was sent and received prior to March 9, 2015, and that the UIM action was initiated more than three years after that date. The parties disagree only on which date was "the date of the last liability policy payment." Marriott contends that "[t]he 'last policy payment' occurred on April 7, 2015," the date on which AFCIC received the executed Release from Marriott. Dkt. No. 27 at 1. In support, Marriott argues that Mr. Shaw, as Marriott's attorney, "had an ethical obligation to hold the [settlement] check in escrow for AFCIC until Marriott signed the Release and the Release had been returned to AFCIC." *Id.* at 2. Marriott characterizes AFCIC's receipt of the executed Release as a "condition precedent to AFCIC's authorization for Mr. Shaw and Mr. Marriott to negotiate the check." *Id.* at 4. In essence, Marriott contends that the funds belonged to AFCIC until the signed Release was returned to AFCIC, and Mr. Shaw was not authorized to deposit or negotiate the check until it was received. *Id.* at 3.

Allstate, on the other hand, contends that the date of the last liability policy payment "occurred on or about December 12, 2014," the date on which the settlement check was sent. Dkt. No. 21 at 10. Allstate argues that the ordinary meaning of "payment" in the statute is the sending and receiving of money. Here, Allstate argues, payment occurred when the check was sent (or, in the alternative, no later than when it was received by Marriott's attorney). *Id.* at 15. Allstate's motion succeeds so long as the "date of the last liability policy payment" was any date prior to March 16, 2015, three years before the current action was filed.

The statute does not offer any instruction on calculating the precise "date of the last liability policy payment." The parties agree, however, that the final settlement check was both sent by AFCIC and received by Marriott's attorney before March 9, 2015. Normally, this would

4

settle the question: the date of the last payment occurred prior to March 9. Checks are typically treated like cash—payment occurs when the check changes hands. The recipient is typically free to deposit the check at any reasonable time, but a recipient's delay in depositing will not make the payment late. *See, e.g.*, *In re White River Corp.*, 799 F.2d 631, 634 (10th Cir. 1986) ("[I]n the commercial world receipt of a check, as distinguished from the date it clears the drawee bank, is customarily looked upon as the date of payment of an obligation.") (quoting *Young Supply Co. v. McLouth Steel Corp.*, 55 B.R. 356, 357 (E.D.Mich.1985)).

The court finds Allstate's interpretation of the statutory language to be correct. The "last liability policy payment" occurred when the check was sent on December 12, 2014 or, at the latest, when the check was received by Marriott's attorney, shortly thereafter. AFCIC's authorization of payment was not, as Marriott contends, conditioned on the return of the executed Release. It is conceivable that an insurance company might condition the cashing of a check on the return of an executed release. An insurer could include language to that effect in its proposed release or settlement agreement, i.e.: "Payment will not be made, and no check may be deposited, until insurer has received an executed release of all claims from the insured." If an insurer using this language sent the insured a check before receiving a signed release, the "date of payment" would arguably be the date on which the insurer received the release. Here, however, no such language appears.

AFCIC's receipt of the signed Release was also not a "condition precedent" to payment in any sense of the term. In contract law, a condition precedent "may be either a condition precedent to the formation of a contract or a condition precedent to performance under an existing contract." 17A Am. Jur. 2d Contracts § 448. The return of the executed Release was

5

certainly not a condition precedent to the *formation* of a contract here; the parties formed a valid, enforceable contract on December 4, 2014 when Marriott, through his attorney, accepted AFCIC's offer. It was furthermore not a condition precedent to AFCIC's performance for at least two reasons. First, "conditions precedent typically fall outside the control of the parties." *McArthur v. State Farm Mut. Auto. Ins. Co.*, 274 P.3d 981, 988 (Utah 2012). Here, the return of the executed agreement was almost entirely in Marriott's control. Second, conditions precedent must be stated in clear language. 17A Am. Jur. 2d Contracts § 449 ("When the intent of the parties is doubtful, courts will interpret the agreement as creating a covenant rather than a condition precedent"). Marriott and AFCIC exchanged email correspondence while finalizing their agreement. AFCIC then sent the check with its associated documentation, and it simultaneously sent a Release with an accompanying letter. None of these documents included any conditional language suggesting that Marriott's return of the executed release was anything other than an ordinary covenant.

Marriott's contention that Mr. Shaw had an ethical obligation to hold the check in escrow until the Release had been signed, and that such a practice is common among similar practitioners, does not change the determination of the payment date. Practitioners may indeed agree that holding such checks in escrow until a signed release is returned is standard practice. They may even agree that they are ethically required to follow this practice. Even if so, the terms of the settlement agreement govern the meaning of "payment" in this case. Here, AFCIC placed no restrictions on Marriott's ability to deposit the check, and the contract required no specific conditions on AFCIC's payment of the settlement amount. Trade customs and ethical

6

obligations, real or perceived, cannot change the fact that payment was sent and received on or about December 12, 2014.

The parties each had obligations under the settlement agreement. AFCIC was required to pay Marriott $100,000. Marriott was required, in return, to sign the Release and return it to AFCIC. AFCIC sent a check for $100,000 to Marriott's attorney on December 12, 2014 and it was received soon thereafter. Once it was received, payment was complete. Marriott later performed his obligation by sending AFCIC the executed release, which was received on April 7, 2015. While Marriott was contractually obligated to sign the release, his performance had no bearing on the date of payment. The date of the last liability payment was the date the settlement check was sent to, or received by, Marriott's attorney, which both parties agree occurred prior to March 16, 2015. Marriott's claim for UIM benefits is therefore barred by the three-year statute of limitations.

## CONCLUSION

For the foregoing reasons, Allstate's Motion for Summary Judgment is GRANTED.

DATED this 26th day of November, 2019.

BY THE COURT:

Dee Benson
United States District Judge